**FIESTA POOLS OF OKLAHOMA CITY and Employers Casualty Company, Petitioners,**

v.

**Guy L. PRATT and the State Industrial Court, Respondents.**

**No. 40927.**

Supreme Court of Oklahoma.

Sept. 14, 1965.

Ray Teague, Oklahoma City, for petitioners.

Marx Childers, Charles W. Adams, Oklahoma City, Charles R. Nesbitt, Atty. Gen., for respondents.

JACKSON, Vice Chief Justice.

This is an original proceeding by employer, Fiesta Pools of Oklahoma City, and its insurance carrier, for review of an

award of the State Industrial Court in favor of claimant, Guy L. Pratt.

Pratt suffered injury to a pre-existing hernia when he fell on August 16, 1962, while carrying a 94 pound sack of cement. There was evidence that the injury was very painful and that the "hernia came out very large and could not be reduced". On August 19, 1962, he had surgery for "left inguinal herniorrhaphy and small bowel resection with removal of approx. 4 feet of the small intestine". He left the hospital on September 20, 1962, and filed his first notice of injury and claim for compensation on November 5, 1962. With regard to the nature and extent of injury, the claim recited "hernia; operation by Dr. H., Pasteur Building, Oklahoma City, Oklahoma."

For reasons not appearing in the record, the claim was not heard until January 7, 1964. At the beginning of the hearing, claimant's counsel announced that the case was then being presented on the issues of temporary total disability, temporary partial disability "and additional medical treatment, in the form of surgery to remove the sutures that are still in Mr. Pratt's side and draining at this time". There was no objection to this delineation of the issues.

On January 16, 1964, the trial judge entered an order including findings in five numbered paragraphs which may be summarized as follows: (1) that claimant sustained an accidental personal injury which resulted in the *aggravation of a pre-existing left inguinal hernia*; (2) that no written notice was given but that employer had actual notice and was not prejudiced; (3) that the hernia strangulated with complications and emergency surgery was performed by Dr. B, and that employer and insurance carrier are responsible for all medical expenses and subsequent care and treatment; (4) that claimant was temporarily totally disabled from August 16, 1962 to March 23, 1963, for which he was entitled to payment from employer and insurance carrier, who were also ordered to furnish claimant medical treatment for correction of the drainage condition which followed the surgery, and to pay him compensation during the period of such treatment; (5) that the claim for temporary partial disability was denied and the question of permanent partial disability was held in abeyance.

This order was sustained on appeal to the State Industrial Court en banc, after which employer and insurance carrier began this original proceeding for review in this court. We shall refer to them hereinafter as petitioners.

In this court, petitioners first argue that the finding of an accidental personal injury resulting in the aggravation of a pre-existing hernia is not supported by the evidence. The argument under this proposition is directed toward the fact that although the claim was for "hernia", and the evidence of two doctors testifying for claimant by written report mentioned no pre-existing condition, the finding of the State Industrial Court was that the accident resulted in "aggravation of a pre-existing left inguinal hernia".

The two doctors examined claimant about a year after his injury, and their reports for the most part were concerned with the complications which followed the surgery; they fully support the claim for additional medical treatment, which claimant's counsel had set out as one of the issues to be tried.

Petitioners have overlooked the following entry on the hospital records of the claimant.

"* * * CC: Irreducible hernia. HPI: 56 year old negro male has had a left inguinal hernia for four years, always small and reducible. Friday (before admission) at 3:30 PM the hernia came out very large and could not be reduced. * * *"

These notes were signed by Dr. B, the surgeon (not one of the two doctors above noted). They fully support the finding of a pre-existing condition. The hospital records were in evidence and no question is raised as to their admissibility. On this point, see City of Altus v. Martin, Okl., 268 P.2d 228.

Petitioners' second proposition is that the court's finding number two, to the effect that no written notice was given but that employer had actual notice and was not prejudiced, is not supported by the evidence.

Petitioners' discussion of the evidence on this point consists essentially of an attack upon the weight thereof, instead of its sufficiency. They concede that claimant testified that he told the "boss" that "I am hurt". Claimant's testimony to which they refer was as follows:

"* * * when I hit the hole I went down, I had the cement in my arms, and I told one of the boss men 'I am hurt'.

\* \* \* \* \* \*

"He said, 'Guy, you get out of there and wait awhile and you might be all right'. And my groin kept running down."

In their brief, petitioners point out that claimant denied under oath that he had a pre-existing hernia (contrary to the findings of the State Industrial Court), and say "The credence of claimant's testimony, in regard to the accident, and alleged notice thereof, should be weighed in the same scales of truthfulness". It is well settled that the State Industrial Court has power to weigh the evidence and pass upon the credibility of witnesses, Hackley v. Dalles Nursing Home, Okl., 372 P.2d 586, and that if there is any competent evidence to support a finding of the State Industrial Court excusing the giving of written notice and finding that the employer was not prejudiced, the finding will not be disturbed on review, Townley's Dairy v. Gibbons, Okl., 395 P.2d 947. We hold that the above noted testimony is competent evidence in support of the finding that actual notice was given.

Petitioners also argue under this proposition that in the situation presented (where there is no written notice but actual notice is given) the burden of showing that no prejudice resulted to the employer is on the claimant. This argument overlooks Rule 18 of the State Industrial Court which provides that "* * * Failure to give such (written) notice to the employer will be excused in the absence of positive proof of prejudice *by the employer or its insurance carrier* when actual notice was given within thirty (30) days * * *" (emphasis supplied). For a discussion of this rule, see Nunnery v. Beatrice Foods Company, Okl., 340 P.2d 236. The cases cited by petitioners in support of their argument were all decided prior to the adoption of the opinion in the Nunnery case, supra, in which this court's attention was alerted to the provisions and proper import of Rule 18.

In their last proposition, petitioners argue that the Industrial Court's finding of temporary total disability, and directing respondent and insurance carrier to furnish further medical treatment is erroneous and contrary to the provisions of the Workmen's Compensation Act.

It is argued that by virtue of 85 O.S. 1961, Sec. 22, subdivision 3, the maximum permissible award for temporary total disability for hernia is compensation for 14 weeks, and that the award made in this case is therefore excessive.

In support of this argument, petitioners cite Dunning Construction Co. v. Heck, 160 Okl. 93, 15 P.2d 988; Southland Gasoline Co. v. Bowlin, 152 Okl. 117, 3 P.2d 663; Nelson Electric Mfg. Co. v. Cartwright, Okl., 277 P.2d 163; Barnsdall Oil Co. v. State Industrial Commission, 178 Okl. 242, 62 P.2d 655, and Pettit Motor Co. v. Pettit, Okl., 353 P.2d 20.

These cases are distinguishable on both the law and the facts. The Dunning, Southland and Barnsdall cases hold only that where the injury consists of a hernia and nothing more, the award for temporary total disability is limited to 14 weeks, in accordance with the statute. The Nelson and Pettit cases hold that a hernia injury is not "combinable" with other injuries (to back and leg respectively) in arriving at a percentage of permanent partial disability.

In the instant case, the State Industrial Court found that there was an aggravation

of a pre-existing left inguinal hernia; that it "strangulated with complications and emergency surgery was performed"; and petitioners were ordered to furnish additional medical treatment for the "correction of drainage condition in the surgical scar". The finding of a "drainage condition" was amply supported by evidence to the effect that the presence of non-absorbable sutures at the operative site prevented it from properly healing.

Thus it cannot be said that this case involves a hernia only, and there was no attempt to "combine" a hernia injury with other specific injuries in arriving at a percentage of permanent partial disability. The award in this case was for temporary total disability.

Seismograph Service Corporation v. Cosby, Okl., 317 P.2d 215, is more nearly in point. In that case the employer had paid a total of 14 weeks compensation, plus costs of an operation for hernia, prior to the hearing before the State Industrial Court. The order of the State Industrial Court, awarding him an additional amount as permanent partial disability, because of complications which followed the surgery, was sustained in this court.

The only case that has come to our attention in which this court held that an award for disability resulting from the aggravation of a pre-existing hernia was not subject to the provisions of the "hernia" paragraph of 85 O.S.1961, § 22(3) (14 weeks) is United States Casualty Co. v. Steiger, 179 Okl. 407, 66 P.2d 55. At the time that case was decided, the statutory provision was compensation for 8 weeks instead of 14 as it is now, and our research has not disclosed any subsequent case in which the Steiger case was cited as authority on this precise point.

In the Steiger case, the Industrial Commission had made a "specific" award for compensation for 8 weeks under the "hernia" paragraph. This court held in effect that the award should have been made under what is now 85 O.S.1961, § 22(2) (the "temporary total disability" subsection).

Since there was competent evidence that claimant was temporarily totally disabled for a period of 8 weeks, the holding of this court had no effect on the total amount of compensation to be paid to the claimant, and the Commission's order was affirmed. A reading of the Steiger opinion indicates that the principal argument made concerned certain medical expenses which the Commission ordered the employer to pay. On this question, the Steiger case has been regularly cited as authority in subsequent cases. Possibly for this reason, and also because the holding of this court on the question stated at the beginning of the preceding paragraph made no difference in the amount to be paid to claimant for compensation, we feel that that question did not receive proper consideration.

 Upon reconsideration, we are of the opinion that the Steiger case is unsound, and that it should be, and is hereby, overruled insofar as it holds that the provisions of the "hernia" paragraph of 85 O.S. 1961, Sec. 22(3) do not apply in cases where claimant has suffered an aggravation of a pre-existing hernia.

The legislative history of the hernia provisions of our Workmen's Compensation Law discloses no legislative purpose to make a distinction upon the basis of whether the injury resulting in the · hernia was an "original" injury, or whether it was merely an aggravation of a pre-existing hernia. As it was originally enacted in 1915, the "Schedule of Compensation" of our statute (now Sec. 22) made no specific reference to hernia injuries. This section was divided generally into four subsections, each dealing with a different type of disability (permanent total, temporary total, permanent partial and temporary partial). In 1923, a "hernia" paragraph was added to the third subsection (dealing with permanent partial disability). Under the 1923 statute, compensation was either for 8 weeks or for permanent total disability—there could be no "in between" award. In 1941 the period was changed from 8 weeks to 14 weeks. In 1957 the hernia paragraph

was again amended and the 14 weeks compensation for the first time was designated as "temporary total compensation", although the paragraph was left in the subsection dealing with permanent partial disability. The 1957 amendment also made it possible for the State Industrial Court, under certain conditions not existing in this case, to make an award for permanent total disability, or for permanent partial disability under the "other cases" paragraph of Sec. 22 (3).

The hernia provisions of the Oklahoma statute make no special requirements insofar as evidentiary proof of the injury is concerned; a hernia injury is shown in the same way, and in accordance with the same rules of evidence, as injuries in other compensation cases. Also, there has never been any statutory prohibition in Oklahoma against awards for injuries resulting in the aggravation of a pre-existing hernia; and no statutory distinction has ever been made between an "original" hernia and a preexisting hernia which is aggravated or enlarged by injury.

We can perceive of no reason in logic or common sense why the hernia provisions of the statute should not apply equally in the case of an "original" hernia and also in the case of the aggravation or enlargement of a pre-existing hernia. In either case, the *result* is the same: a disability for which compensation is payable under our Workmen's Compensation Law.

We therefore hold that, since the State Industrial Court found, and the evidence shows, that claimant's injury resulted in the aggravation of a pre-existing hernia, claimant is entitled to compensation for 14 weeks for temporary total disability under the hernia paragraph of 85 O.S. 1961, Sec. 22(3):

It does not necessarily follow, however, that the award in this case must be limited to temporary total compensation for 14 weeks. Under the findings and the evidence, complications followed both the hernia injury (it strangulated with complications necessitating the removal of

about 4 feet of the small intestine) and the surgery (a drainage condition resulted because of the presence of gangrenous matter and the use of unabsorbable sutures at the operative site). We might add that there was no evidence that the use of unabsorbable sutures was an improper surgical procedure. It should be remembered also that the issue of permanent partial disability, if any, was not submitted at the hearing before the State Industrial Court, but was reserved for future determination.

■ Complications following the hernia injury and the surgery are compensable if they cause additional disability, and the compensation is not limited, as to amount or duration, by the provisions of the hernia paragraph of 85 O.S.1961, § 22(3). See Seismograph Service Corporation v. Cosby, Okl., 317 P.2d 215, in which claimant received payment for 14 weeks and an additional award for 65 weeks for "hernia and complications".

■ It is argued, however, that the evidence is insufficient on the question of when claimant's period of temporary total disability ceased, and we find merit in this contention. Claimant's counsel apparently thought that the hospital records showed the date when claimant was discharged as able to return to work, but they do not. Claimant testified that he was unable to work for 6 or 7 months, but there is no expert medical evidence in this regard. All medical reports in the record mention, in one way or another, the complications existing in this case. The report of Dr. M, for the employer and insurance carrier, dated 17 months after the injury, states that claimant's "temporary total disability has long since ended" and it is fair to say, from the whole record, that there *was* a period of actual temporary total disability, but that the record does not show when such period ceased. Since an award for temporary total disability under the hernia paragraph of Sec. 22(3) is in the nature of an award for a specific injury (Wilkerson Chevrolet, Inc. v. Mackey, Okl., 367 P.2d 165), we can

sustain an award of 14 weeks under the hernia paragraph without regard to the *actual* length of the temporary total disability period. This is not true, however, as to that portion of the award attributable to the complications, for which the statute does not prescribe the exact amount to be paid.

Under authority of the hernia paragraph of Sec. 22(3), the award is sustained insofar as it allows payment for temporary total disability for 14 weeks; it is also sustained insofar as it orders payment for further medical treatment and payment of compensation during the period of such treatment; it is sustained as to that portion denying payment for temporary partial disability, upon which no attack is made in this court. It is vacated insofar as it awards compensation for temporary total disability in excess of 14 weeks, and the cause is remanded to the State Industrial Court for further proceedings not inconsistent herewith, and without prejudice to a reconsideration of the question of the amount or period of temporary total disability attributable to the complications which followed the hernia and the surgery.